UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEPHANIE WIMBISH FOR RAEQWON      :
KAHLIC WIMBISH,

                                               :

                Plaintiff,

                                               :

              -against-               **REPORT AND RECOMMENDATION**

                                               :

COMMISSIONER OF SOCIAL SECURITY,          10 Civ. 8227 (WHP)(KNF)

                                             :

                Defendant.
-----------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE WILLIAM H. PAULEY, III, UNITED STATES DISTRICT JUDGE

## BACKGROUND

     A minor, Raeqwon Kahlic Wimbish ("Wimbish"),[1] commenced this action <u>pro se</u> against

the Commissioner of Social Security ("Commissioner"), seeking review of an administrative law

judge's ("ALJ") decision finding him ineligible for a child's Supplemental Security Income

("SSI") benefits, under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-1383f.

The Commissioner answered.  Before the Court is the Commissioner's unopposed motion for

judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

***Administrative Procedural History***

     On September 21, 2007, Wimbish filed an application for Title XVI SSI benefits,

alleging he was disabled, since October 1, 1997.  (Tr. 91-93).  His application was denied and he

requested a hearing before an ALJ.  (Tr. 50-53).  The hearing was held on August 15, 2008.  (Tr.

---

[1] Although Rule 5.2 of the Federal Rules of Civil Procedure provides that only a minor's
initials may be used in court filings, that privacy protection is waived when a filing is made
using the minor's full name, such as was done here.  <u>See</u> Fed. R. Civ. P. 5.2.

27-49).  On October 1, 2008, the ALJ found that Wimbish was not disabled.  (Tr. 14-26).  On

August 27, 2010, the Appeals Council denied Wimbish's request that the ALJ's decision be

reviewed, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).  This

action followed.

***Non-Medical Evidence***

      Wimbish's mother testified at the administrative hearing that Wimbish was twelve years

old at that time and lived with her and his three siblings.  (Tr. 31, 33).  She stated that her only

income was the SSI benefits she received for her oldest child and that Wimbish received

Medicaid benefits.  (Tr. 32-33).  Wimbish was diagnosed with asthma, in 1997, and had received

SSI benefits from December 2003 to August 2005.  (Tr. 33).  Wimbish complained of shortness

of breath and tightness in his chest and he experienced nervousness caused either by the

medication Prednisone or Albuterol.  (Tr. 34).  Sometimes, he experienced a high fever.  (Tr.

34).  Wimbish's mother testified that his asthma attacks fluctuated, depending on the season,

from two to three times per month, to four to five times per month, lasting three to four days.

(Tr. 44-45).  Wimbish took medication including Pulmicort, Singulair and Albuterol through a

nebulizer, when needed.  (Tr. 37).  He received assistance from the Harlem Zone Asthma

Initiative Program, which was removing mold from his bathroom.  (Tr. 38).  His mother testified

that he was articulate, but his attention span was limited.  (Tr. 43).  Wimbish was transferring to

a charter school that had a ratio of three teachers to eighteen students because he had fallen

behind in his current school, given his numerous asthma-related absences from school.  (Tr. 39).

Wimbish testified that he completed fifth grade and his asthma did not keep him from doing

anything he likes to do, such as playing video games or playing outdoors.  (Tr. 42).  Wimbish's

school records indicate that, in the fall of 2005, his attendance rate was 97%, in the spring of

2006, 94%, in the fall of 2006, 92%, and, in the spring of 2007, 95%.  (Tr. 143).

***Medical Evidence***

Dr. Tomasito Virey

On October 17, 2007, Wimbish underwent a pediatric, consultative examination by Dr. Tomasito Virey ("Dr. Virey").  (Tr. 136-40).  Wimbish's mother reported that no restriction existed on her son's physical activity at school and he performed well in fifth grade.  (Tr. 136-37).  Wimbish's activities included watching television, listening to music, playing with others, doing homework, reading, coloring and drawing.  (Tr. 137).  During the examination, Wimbish was alert, active, friendly and cooperative.  (Tr. 138).  His cognitive function, affect, hearing, vision, gait and speech were within normal limits for his age group.  (Tr. 138).  Dr. Virey noted mild prolonged expiratory wheezing and no rhonchi or obstructions.  (Tr. 138).  Wimbish had some eczema on his skin.  (Tr. 138).  His heart, abdomen, extremities, spine, muscles, hips and joints were within normal limits.  (Tr. 138-39).  Wimbish had fine motor activity of the hands. (Tr. 139).  His hand strength was appropriate, as were his reflexes.  (Tr. 139).  Dr. Virey diagnosed Wimbish with chronic asthma, with multiple hospitalization for status asthma based on age group.  (Tr. 139).  Dr. Virey opined that Wimbish had difficulty participating in age-appropriate recreational—primarily physical—activity because of the severity, chronicity and frequency of his asthma attacks, and because he had to take medication regularly.  (Tr. 139).  Dr. Virey recommended Wimbish try desmopressin acetate, via inhaler or by mouth, for nocturnal bed wetting and, if he did not respond, he should be referred to a pediatric urologist.  (Tr. 139-40).

Dr. J. Randall

On December 17, 2007, a state agency consultant, Dr. J. Randall ("Dr. Randall"),

reviewed Wimbish's medical records and completed a childhood disability evaluation review. (Tr. 178-83).  Dr. Randall noted that: (1) Wimbish reported one emergency room asthma treatment in the past six months; and (2) the record contained no evidence of a hospital admission or emergency room treatments for asthma.  (Tr. 181).  Dr. Randall indicated that Wimbish's asthma triggers included weather changes, upper respiratory infection, physical activities and allergens.  (Tr. 181).  Dr. Randall also noted mild, prolonged expiratory wheezing, with normal chest excursion and movements, and indicated that the remainder of the physical examination was normal.  (Tr. 181).  Dr. Randall diagnosed Wimbish with asthma, which was severe, but did not meet or equal the listing of impairments under the SSA.  (Tr. 178). Moreover, Dr. Randall assessed that Wimbish had no limitation in the domain of acquiring and using information, attending and completing tasks, interacting with others, moving about and manipulating objects or caring for himself.  (Tr. 180-81).  Dr. Randall indicated less than marked limitations in the domain of health and physical well-being.  (Tr. 181).

Harlem Hospital Pediatric Resource Center

On April 17, 2008, Dr. Kamna Jaiswal ("Dr. Jaiswal"), of the Harlem Hospital Pediatric Resource Center, completed two forms at the request of Wimbish's counsel, which were also signed by Dr. Marguerite Silvera ("Dr. Silvera").  (Tr. 77-85).  Dr. Jaiswal stated that she had first seen Wimbish on March 27, 1998, and examined him most recently, on April 17, 2008.  (Tr. 77).  She noted that Wimbish had seven to eight asthma attacks yearly, lasting two to three days each, and he needed four to five days to resume his normal activities after each episode.  (Tr. 78).  Dr. Jaiswal reported that Wimbish visited the Harlem Hospital emergency room twenty-eight times, with the last visit occurring on April 8, 2008.  (Tr. 79).  Wimbish took the medications Pulmicort, Albuterol, and Singulair, and the treatment was effective.  (Tr. 79).  Dr.

4

Jaiswal observed that Wimbish experienced anxiety with Albuterol.  (Tr. 83).  She noted that he had multiple hospitalizations, including one intensive care unit admission, without specifying when that admission occurred.  (Tr. 80).  She also reported that he had multiple short courses of corticosteroids that averaged more than five days per month, for at least three months during a twelve-month period, without specifying the relevant year(s).  (Tr. 80).  Dr. Jaiswal stated that Wimbish's environmental limitations included concentrated exposure to extreme cold, high humidity, fumes, odors, dusts and gases, perfumes, cigarette smoke, solvents, cleaners, chemicals and stress.  (Tr. 78).  She recommended that he avoid exposure to pollen and ragweed. (Tr. 78).  Dr. Jaiswal diagnosed Wimbish as a well child with asthma.  (Tr. 82).  She noted no symptoms and complaints by Wimbish and that he was hospitalized twice in 2001, three times in 2002, on May 17, 2007, and on April 8, 2008.  (Tr. 83).  Dr. Jaiswal assessed that Wimbish had no personal-development impairment but exhibited an inability to concentrate.  (Tr. 85).

Dr. Sree Chandrasekhar

Dr. Sree Chandrasekhar ("Dr. Chandrasekhar") reviewed Wimbish's medical records and testified as a medical expert at the administrative hearing.  (Tr. 46-49, 88-89).  Dr. Chandrasekhar testified that Wimbish had chronic, intermittent asthma, which was improving. (Tr. 47).  Dr. Chandrasekhar noted that Wimbish was hospitalized on May 18, 2007, and on April 8, 2008, which coincided with emergency room visits.  (Tr. 47).  In Dr. Chandrasekhar's opinion, Wimbish did not have an impairment which met or equaled the requirements of an impairment under the SSA.  (Tr. 478).  Wimbish was assessed with less than marked limitations in the domain of acquiring and using information and attending and completing tasks, due to poor attention and drug side effects.  (Tr. 478).  Moreover, Wimbish had less than marked limitations in the domain of moving about and manipulating objects and health and physical

well-being.  (Tr. 48).

### Additional Evidence Before the Appeals Council

After the ALJ issued her decision, Wimbish submitted additional evidence to the Appeals Council.  (Tr. 202-52).  On April 11, 2006, Wimbish was seen at the Harlem Hospital emergency room.  (Tr. 239).  He complained of coughing and wheezing, with chest tightness, and the noted assessment was tachypneic with retractions and wheezing on auscultation.  (Tr. 239).  No treatment was indicated.  (Tr. 239).  On October 26, 2006, Wimbish was seen at the Harlem Hospital emergency room and wheezing was noted on auscultation.  (Tr. 238).  No treatment was indicated.  (Tr. 238).  From May 16 to May 18, 2007, Wimbish was treated at Harlem Hospital, where he was admitted through the emergency room, after he presented with wheezing, cough and chest tightness.  (Tr. 235).  He was treated with Prednisone, Albuterol and Terbulatine.  (Tr. 235).

Wimbish was treated for asthma again at Harlem Hospital from April 4 to April 8, 2008, after he was admitted through the emergency room.  (Tr. 224-34).  He was transferred to the pediatric intensive care unit where he received Albuterol, continuously, and Atrovent and Solumedrom every six hours.  (Tr. 224).  Gradually, Wimbish's condition improved and he was discharged in stable condition, with some complaints of abdominal pain.  (Tr. 224).

On April 17, 2008, Wimbish underwent a routine health check-up and asthma follow-up, performed by Dr. Silvera at Harlem Hospital's Pediatric Resource Center.  (Tr. 220-22).  Dr. Silvera noted that Wimbish had not "been to see a doctor for 3-4 years," and he reported no asthma symptoms.  (Tr. 220).  She noted that Wimbish was doing fine, except that he had learning difficulties and his grades had been dropping.  (Tr. 220).  Dr. Silvera observed that Wimbish's weight and height were age-appropriate.  (Tr. 220).  His lungs showed good air entry,

and no rales, rhonchi or wheezes were observed.  (Tr. 221).  The examination was normal,

except for some dry skin.  (Tr. 221A).  Wimbish received a vaccination and a hearing test was

administered.  (Tr. 222).  Dr. Silvera noted that Wimbish needed a pulmonary follow-up.  (Tr.

222).  On June 19, 2008, Wimbish was treated at Harlem Hospital's emergency room for

exacerbation of asthma.  (Tr. 217-18).  He complained of a cough, wheezing and shortness of

breath.  (Tr. 218).

***The ALJ's Decision***

On October 1, 2008, the ALJ rendered her decision.  (Tr. 17-26).  The ALJ stated that the

issue was whether Wimbish was under disability, as that term is defined in the SSA for the

purpose of determining eligibility for benefits, pursuant to Title XVI of the SSA.  (Tr. 17).  The

ALJ found that Wimbish: (1) was a school-age child on September 21, 2007, the date of his

application; (2) had not engaged in substantial gainful activity at any relevant time; (3) had a

severe impairment, namely, bronchial asthma; (4) did not have an impairment or combination of

impairments that meets or equals medically one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1; (5) did not have an impairment or combination of impairments that

equals, functionally, one of the listed impairments; and (6) had not been disabled since

September 21, 2007, the date of his SSI application.  (Tr. 20-26).  More specifically, the ALJ

determined that Wimbish's impairment does not meet or equal medically the statutory

requirements for asthma, based on Dr. Chandrasekhar's testimony and the record.  (Tr. 20).

After considering all the symptoms and the opinion evidence, the ALJ found that Wimbish's

asthma could be expected, reasonably, to produce the alleged symptoms, but that the statements

about the intensity, persistence and limiting effects of those symptoms were not credible, to the

extent that they were inconsistent with the finding that Wimbish does not have an impairment or

7

combination of impairments that equals, functionally, the statutory listings.  (Tr. 21).

The ALJ considered how well Wimbish was able to acquire or learn and use information, finding that he had less than marked limitation in acquiring and using information, because he had no significant problems with learning in school or sustaining and completing activities.  He was age-appropriate in language development, and his attendance has improved since his early school years.  With respect to Wimbish's attendance and completion of tasks, the ALJ determined that he had less than marked limitation and that the only limitations in this area concern mild problems related to the use of asthma medication, which can cause him to feel anxious or "jumpy"; otherwise he had no documented, serious attention or concentration limitations.  The ALJ then considered Wimbish's interaction with others, finding that he had no limitations or impairment in that area.  The ALJ found that Wimbish had less than marked limitation in moving about and manipulating objects, because he plays without restrictions and had no fine or gross motor deficits, although he has problems with shortness of breath and chest tightness and is susceptible to an asthma attack from overexertion.  The ALJ considered Wimbish's ability to care for himself, finding he had no limitations.  Concerning Wimbish's health and physical well-being, the ALJ determined that Wimbish had less than marked limitation, resulting from his two hospitalizations, since September 2007, and the emergency room visits corresponding to those stays.  The ALJ stated that Wimbish's need for emergency treatment was not frequent and he required medication and regular medical visits, although his medication may cause some minor side effects and some limitations in his physical functioning, but not to the extent that it would be considered marked.  Accordingly, the ALJ concluded that Wimbish did not have an impairment or combination of impairments that results in either marked limitations in two domains of functioning or extreme limitation in one domain of

functioning, and that he has not been disabled since September 21, 2007.

***Motion for Judgment on the Pleadings***

Wimbish contends, in his complaint, that the ALJ's decision is not supported by substantial evidence and is contrary to law.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and the ALJ followed the three-step sequential evaluation analysis properly.  According to the Commissioner, Wimbish's medical evidence fails to show that his asthma satisfied all of the medical criteria of the statutory listings because: (a) he did not have at least six asthma attacks within a twelve-month period; (b) no pulmonary function test during the period at issue exists; (c) the record does not demonstrate persistent low-grade wheezing; and (d) he had only intermittent asthma.  The Commissioner contends that the ALJ's determination of Wimbish's limitations in the six domains is supported by substantial evidence and the evidence he submitted to the Appeals Council did not provide a basis for remand, because it did not relate to the period at issue and did not contradict the ALJ's finding that Wimbish was not disabled.

## DISCUSSION

***Legal Standard***

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence"

or if the decision is based on legal error.  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).   "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the [multi-step] analysis set out in the SSA regulations."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, a child, under the age of eighteen, must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The SSA regulations establish a three-step process for determining a child's disability claim: (1) the child must not be engaged in "substantial gainful activity"; (2) the child "must have a medically determinable impairment(s) that is severe," which is an impairment that causes "more than minimal functional limitations"; and (3) the child's impairment or combination of impairments "must meet, medically equal or functionally equal" an impairment listed in an appendix to the regulations.  See 20 C.F.R. § 416.924; 20 C.F.R. pt. 404, subpt. P, app.1.  For a child's impairment to equal, functionally, a listed impairment, the impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R.  § 416.926a(a).  The domains considered to determine whether impairments result in marked or extreme limitations include: (1) acquiring and using

information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) a child's health and physical well-being.  See 20 C.F.R. § 416.926a(b)(1).

A marked limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i).  The SSA regulations explain that marked limitation also means: (a) the equivalent of the functioning "on standardized testing with scores that are at least two, but less than three, standard deviations below the mean"; (b) "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score"; and (c) for the domain of health and physical well-being, frequent illness due to an impairment(s) or frequent exacerbations of the impairment(s), resulting in significant, documented symptoms or signs, or episodes that occur more often than three times a year or once every four months but do not last for two weeks, or occur less often than an average of three times a year, or once every four months, but last longer than two weeks, if the overall effect is equivalent in severity.  See 20 C.F.R. § 416.926a(e)(2).

An extreme limitation  "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is "more than marked."  20 C.F.R. § 416.926a(e)(3)(i).  The SSA regulations explain that extreme limitation also means: (i) the equivalent of functioning on standardized testing with scores that are at least three standard deviations below the mean; (ii) a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that

11

domain and the child's day-to-day functioning in domain-related activities is consistent with that score; and (iii) for the domain of heath and physical well-being, episodes of illness or exacerbations of the child's impairment(s) resulting in significant, documented symptoms or signs substantially in excess of the requirements for showing a marked limitation. See 20 C.F.R. § 416.926a(e)(3)(i). The ALJ evaluates a child's limitations from his or her impairment(s) in any affected domain. See 20 C.F.R. § 416.926a(c). The SSA regulations do not require the ALJ to consider the combined effect of a child's impairments across domains. See Encarnacion v. Astrue, 568 F.3d 72, 73 (2d Cir. 2009) (upholding the Commissioner's policy not to engage in an analysis of the combined effect of a child's impairments across domains).

***Application of Legal Standard***

In making her decision, the ALJ applied the three-step sequential process, as required by the SSA regulations. At the first step, the ALJ determined that Wimbish had not engaged in substantial gainful activity at any relevant time. At the second step, she found that he had a severe impairment, to wit, bronchial asthma. At the third step, the ALJ determined that Wimbish's impairment did not meet or equal medically one of the impairments listed in the SSA regulations. The ALJ then proceeded to analyze whether Wimbish's impairment was equivalent, functionally, to one of the listed impairments by considering, properly, Wimbish's limitations in the six domains, as required by the SSA regulations.

Substantial evidence supports the ALJ's findings in the six domains. Although Dr. Jaiswal stated, on April 17, 2008, that Wimbish's mother and teacher thought he might have some learning problems, Dr. Jaiswal provided no opinion on this issue. No medical evidence supports a finding that Wimbish had a less than marked limitation in the domain of acquiring and using information. The evidence demonstrates that Wimbish's school performance was

12

good and his cognitive function and speech were within normal limits for his age.  Moreover, in light of the allegation that Wimbish had poor attention as a result of his asthma medication, Dr. Chandrasekhar assessed Wimbish with less than marked limitation in this domain.  The ALJ found, properly, that the only limitation in the domain of attending and completing tasks is a limitation in paying attention, as a result of Wimbish's medication, because no evidence shows any serious limitation in this domain.  With respect to Wimbish's interaction and relation with others, the ALJ determined, properly, that nothing in the record points to any problems in Wimbish's interaction with others.  The ALJ's finding that Wimbish had less than marked limitation in moving about and manipulating objects is supported by substantial evidence because the record shows that Wimbish played without restrictions and had no problems with coordination or motor skills; however, his shortness of breath and chest tightness as well as his asthma attacks may be triggered by overexertion.  The ALJ determined, properly, that Wimbish's ability to care for himself is age-appropriate and that he had less than marked limitation in health and physical well-being, due to his occasional emergency treatments and his medication, which may cause some minor side effects and limit somewhat his physical functioning.  Since the ALJ did not find that Wimbish's impairment results in marked limitations in two domains of functioning or extreme limitation in one domain of functioning, it was proper for her to conclude that Wimbish's impairment did not functionally equal any listed impairments.  Accordingly, the ALJ's determination, that Wimbish was not disabled, was supported by substantial evidence and not contrary to law.

## RECOMMENDATION

For the foregoing reasons, I recommend that the Commissioner's decision be affirmed and that the defendant's motion for judgment on the pleadings, Docket Entry No. 14, be granted.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley, III, 500 Pearl Street, Room 2210, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Pauley. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
    August 24, 2011

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE